IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY AUSTEN and DAVID A. ICARDI on behalf of themselves and all others similarly situated,<br><br>                       Plaintiffs,<br><br>        v.<br><br>CATTERTON PARTNERS V, LP, CATTERTON PARTNERS V OFFSHORE, LP, CATTERTON COINVEST I, LLC, INSIGHT HOLDINGS, LLC and ARCHWAY & MOTHER'S COOKIES CO., INC. a.k.a. DOUGH CO.,<br><br>                       Defendants. | CASE NO. 3:09-cv-1257 (MRK) |

**SECOND AMENDED CLASS ACTION COMPLAINT FOR
(1) VIOLATION OF WARN ACT 29 U.S.C. § 2101, ET SEQ.
AND (2) VIOLATION OF CALIFORNIA LABOR CODE § 1400 ET SEQ.**

Plaintiffs Jeffrey Austen and David A. Icardi ("Plaintiffs") allege on behalf of themselves and a class of similarly situated former employees of defendants, by way of their Second Amended Class Action Complaint against Catterton Partners V, L.P., Catterton Partners V Offshore, L.P., Catterton Coinvest I, LLC, Insight Holdings, LLC, and Archway & Mother's Cookies Co., Inc. a.k.a. Dough Co. (collectively, the "Defendants"), by and through their counsel as follows:

**NATURE OF THE ACTION**

1.      On October 3, 2008, Defendants shut down the 72-year-old national cookie baker and distributor they had acquired, terminating without notice the employment and health insurance coverage of their 673 or so full-time employees.

2. Plaintiffs Jeffrey Austen and David A. Icardi were employees of Defendant Archway & Mother's Cookie Co., Inc. (also referred to hereinafter as "Defendant Archway") and the remaining Defendants, until their termination on or about October 3, 2008.

3. The Plaintiffs bring this action on behalf of themselves, and other similarly situated former employees who worked for Defendants and who were terminated without cause, as part of, or as the foreseeable result of, plant closings or mass layoffs ordered by Defendants and who were not provided 60 days advance written notice of their terminations by Defendants, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101 *et seq.* and the California Labor Code § 1400 *et seq.* ("CAL-WARN Act").

4. Plaintiffs and all similarly situated employees seek to recover 60 days wages and benefits, pursuant to the WARN Act, from Defendants.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367 and 29 U.S.C. § 2104(a)(5).

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

7. Venue is proper in this District pursuant to 29 U.S.C. § 2104(a)(5).

## THE PARTIES

*Plaintiffs*

8. Plaintiff Jeffrey Austen was an employee of Defendant Archway and the other Defendants, and worked as a baker at the Defendants' facility located in Ashland, Ohio (the "Ashland Facility") until his termination on or about October 3, 2008.

9. Plaintiff David A. Icardi was an employee of Defendant Archway and the other Defendants, serving as the Western Region Operations Manager, and worked at the Defendants'

2

facility located in San Ramon, California (the "San Ramon Facility") until his termination on or about October 3, 2008.

### *Defendants*

10. Defendant Catterton Partners V, LP, is a Delaware limited partnership with its principal place of business located at 599 West Putnam Avenue, Greenwich, Connecticut and conducted business in this district.

11. Upon information and belief, Defendant Catterton Partner V, LP is an approximately 75% shareholder of Defendant Archway & Mother's Cookie Co., Inc.

12. Defendant Catterton Partners V Offshore, L.P. is a Cayman Islands Corporation with its principal place of business located at 599 West Putnam Avenue, Greenwich, Connecticut and conducted business in this district.

13. Upon information and belief, Defendant Catterton Partners V Offshore LP is an approximately 25% shareholder of Defendant Archway & Mother's Cookie Co., Inc.

14. Defendant Catterton Coinvest I, LLC is a Delaware limited liability company with its principal place of business located at 599 West Putnam Avenue, Greenwich, Connecticut and conducted business in this district.

15. Upon information and belief, Defendant Catterton Coinvest I, LLC is a shareholder of Defendant Archway & Mother's Cookie Co., Inc.[1]

16. Defendant Archway is a Delaware corporation with facilities located in Battle Creek, Michigan and chief executive offices at c/o Insight, 90 New Montgomery Street, Suite 712, San Francisco, California 94105.

---

[1] Defendants Catterton Partners V, LP, Catterton Partners V Offshore, LP and Catterton Coinvest I, LLC shall hereinafter be referred to as "Catterton."

17. Dough Co., a Delaware corporation and is the current or former name of Archway & Mother's Cookie Co., Inc., with its chief executive offices at c/o Insight, 90 New Montgomery Street, Suite 712, San Francisco, California 94105

18. Defendant Archway is the ultimate parent of Mother's Cake and Cookie Company.

19. Mother's Cake & Cookie Company, a California corporation, is the direct parent of Archway Cookies LLC, a Delaware limited liability company. (Archway & Mother's Cookie Co., Inc. a.k.a. Dough Co., Mother's Cake & Cookie Company, and Archway Cookies LLC, collectively are referred to hereinafter as the "Archway Entities.")

20. Defendant Insight Holdings, LLC (hereinafter "Insight"), a California corporation, was the management firm agent through which the Catterton Defendants operated the Archway Entities.

21. Defendant Insight's headquarters were located at 90 New Montgomery Street, Suite 712, San Francisco, California 94105.

22. The Archway Entities' business address was that of Defendant Insight, at 90 New Montgomery Street, Suite 712, San Francisco, California 94105. The location of Defendant Archway's books and records was c/o Insight, 90 New Montgomery Street, Suite 712, San Francisco, California 94105.

23. The boards of directors of Defendant Archway, and all the Archway Entities were composed of individuals from Insight and Catterton.

24. Keith Lively, the owner and President of Insight was the Chairman and Chief Executive Officer, as well as Director, of Defendant Archway and all the other Archway Entities.

4

25. Donald Stanners, a Registered Agent of Insight, was the Chief Financial Officer, Secretary and a Director of Defendant Archway and all the other Archway Entities.

26. Mark Berwick, a Principal and Registered Agent of Insight, was the Treasurer and a Director of Defendant Archway and all the other Archway Entities.

27. Craig Sakin, a Managing Partner and Senior Advisor of Catterton, was the Vice Chairman and a Director of Defendant Archway and all the other Archway Entities.

28. Nikhil Thukral, a Partner of Catterton, was a Director of Defendant Archway and all the other Archway Entities.

29. Michael Chu, a Partner of Catterton, was a Director of Defendant Archway and all the other Archway Entities.

30. William Lynch, a Senior Advisor of Catterton, was a Director of Defendant Archway and all the other Archway Entities.

31. The board of directors of Defendant Archway consisted exclusively of principals or officers of Catterton and Insight. The boards of directors of the other Archway Entities also consisted exclusively of principals or officers of Catterton and Insight, except for member John Stephens, President of the Archway Cookies, LLC and Mother's Cake & Cookie Co.

32. Upon information and belief, the Archway Entities' boards of directors did not include any outside directors who were independent of Insight, Catterton, or the Archway Entities. All the directors of the Archway Entities owed allegiance to Catterton either as agents or principals of Catterton.

33. Defendant Catterton was the Archway Entities' owner, junior lender and equity sponsor.

34. Defendant Catterton oversaw and directed the operations of the Archway Entities both directly and through its agent, Insight.

35. Defendants maintained and operated the Archway Entities' located at 67 West Michigan Avenue, Suite 200, Battle Creek, Michigan (the "Battle Creek Facility" or "Establishment"), and operated additional facilities and establishments, as those terms are defined by the CAL-WARN Act and the federal WARN Act (together the "WARN Acts"), throughout the United States, including California, Ohio and Michigan (collectively the "Facilities").

36. Upon information and belief and at all relevant times, Insight directly managed, and provided operational and financial services to the Archway Entities and ran the day-to-day operations of the Archway Entities for Catterton.

37. Until on or about October 3, 2008, the Plaintiffs and all similarly situated employees were employed by Defendants and worked at or reported to one of their Facilities.

38. On October 6, 2008, the Archway Entities filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, District of Delaware, and moved to have the estates jointly administered.

39. On January 9, 2009, the Archway Entities' Chapter 11 bankruptcy cases were converted to Chapter 7 cases, and on January 21, 2009, Jeoffrey L. Burtch was appointed the Chapter 7 Trustee.

40. Upon information and belief, the Defendants made the decision that the Archway Entities would file for bankruptcy.

41. Upon information and belief, the Defendants made the decision to terminate the Plaintiffs and other similarly situated former employees.

## **WARN CLASS ALLEGATIONS, 29 U.S.C. § 2104**

42. Plaintiffs bring the First Claim for Relief for violation of 29 U.S.C. § 2101 *et seq.*, on behalf of themselves and on behalf of all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ P. 23(a), who worked at or reported to one of Defendants' Facilities and were terminated without cause on or about October 3, 2008, and within 30 days of that date, or were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendants on or about October 3, 2008, and who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5) (the "WARN Class").

43. The persons in the WARN Class identified above ("WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

44. On information and belief, the identity of the members of the class and the recent residence address of each of the WARN Class Members is contained in the books and records of Defendants.

45. On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

46. Common questions of law and fact exist as to members of the WARN Class, including, but not limited to, the following:

    (a) whether the members of the WARN Class were employees of the Defendants who worked at or reported to Defendants' Facilities;

  (b) whether Defendants unlawfully terminated the employment of the members of the WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the WARN Act; and

  (c) whether Defendants unlawfully failed to pay the WARN Class members 60 days wages and benefits as required by the WARN Act.

47. The Plaintiffs' claims are typical of those of the WARN Class. The Plaintiffs, like other WARN Class members, worked at or reported to one of Defendants' Facilities and were terminated without cause on or about October 3, 2008, due to the mass layoffs and/or plant closings ordered by Defendants.

48. The Plaintiffs will fairly and adequately protect the interests of the WARN Class. The Plaintiffs have retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

49. On or about October 3, 2008, Defendants terminated the Plaintiffs' employment as part of a mass layoff or a plant closing as defined by 29 U.S.C. § 2101(a)(2), (3), for which they were entitled to receive 60 days advance written notice under the WARN Act.

50. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation—particularly in the context of WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

51. Concentrating all the potential litigation concerning the WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

52. The Plaintiffs intend to send notice to all members of the WARN Class to the extent required by Rule 23.

### CALIFORNIA WARN CLASS ALLEGATIONS, Cal. Labor Code § 1401

53. Plaintiff David A. Icardi (the "California Class Plaintiff") brings the Second Claim for Relief for violation of Labor Code § 1401 on behalf of himself and a class of similarly situated persons pursuant to Labor Code § 1404 and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or reported to one of Defendants' Facilities and were terminated without cause on or about October 3, 2008 (the "CAL WARN Class").

54. The persons in the CAL WARN Class identified above ("CAL WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

55. On information and belief, the identity of the members of the class and the recent residence address of each of the CAL WARN Class Members is contained in the books and records of Defendants.

56. On information and belief, the rate of pay and benefits that were being paid by Defendants to each CAL WARN Class Member at the time of his/her termination is contained in the books and records of the Defendants.

57. Common questions of law and fact exist as to members of the CAL WARN Class, including, but not limited to, the following:

    (a) whether the members of the CAL WARN Class were employees of the Defendants;

    (b) whether Defendants unlawfully terminated the employment of the members of the CAL WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the CAL WARN Act; and

    (c) whether Defendants unlawfully failed to pay the CAL WARN Class members 60 days wages and benefits as required by the CAL WARN Act.

58. The California Class Plaintiff's claims are typical of those of the CAL WARN Class. The California Class Plaintiff, like other WARN Class members, worked at or reported to one of Defendants' Facilities and were terminated on or about October 3, 2008, due to the termination of the Facilities ordered by Defendants.

59. The California Class Plaintiff will fairly and adequately protect the interests of the CAL WARN Class. The California Class Plaintiff has retained counsel competent and experienced in complex class actions on behalf of employees, including the CAL WARN Act, the federal WARN Act, other similar state laws, and employment litigation.

60. Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the CAL WARN Class predominate over any questions affecting only individual members of the CAL WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation - particularly in the context of CAL WARN Class Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court

against a corporate defendant, and damages suffered by individual CAL WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

61. Concentrating all the potential litigation concerning the CAL WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the CAL WARN Act rights of all the members of the Class.

62. The California Class Plaintiff intends to send notice to all members of the CAL WARN Class to the extent required by Rule 23.

## **CLAIMS FOR RELIEF**

### **Violation of the WARN Act, 29 U.S.C. § 2104**

63. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

64. At all relevant times, Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

65. At all relevant times, Defendants were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a), and continued to operate as a business until they decided to order mass layoffs or plant closings at the Facilities.

66. The Defendants constituted a "single employer" of the Plaintiffs and the Class Members under the WARN Act in that, among other things:

(a) The Defendants shared common ownership, in that Catterton was the sole shareholder of Defendant Archway which was ultimate parent of the other Archway Entities;

11

(b) The Defendants shared common officers and directors, in that the senior management and directors of the Archway Entities were almost wholly composed of individuals from Insight and Catterton;

(c) All of the Defendants exercised *de facto* control over the labor practices governing the Plaintiffs and Class Members, including the decision to order the mass layoff or plant closing at the Facilities;

(d) There was a unity of personnel policies emanating from Defendants that affected the Archway Entities; and

67. (e) There was a dependency of operations as between the Defendants, on the one hand, and the Archway Entities on the other hand.

68. Upon information and belief, in 2005, Catterton purchased Archway & Mother's Cookie Co., Inc. from Parmalat.

69. Upon information and belief, Catterton used Insight to operate its portfolio companies, and Insight had no other purpose than to serve as Catterton's agent.

70. Upon information and belief, Insight was Catterton's management firm and agent for the day-to-day operations of the Archway Entities.

71. Catterton and Insight provided and carried out the financial, operational and management functions necessary to run the Archway Entities.

72. Upon information and belief, the Archway Entities paid Insight and Catterton millions of dollars of management fees for performing the function of managing and operating the Archway Entities.

73. Upon information and belief, Archway Entities are co-borrowers under a Loan and Security Agreement, dated January 28, 2005, with Congress Financial Corporation, a

predecessor to Wachovia Capital Finance Corporation ("Wachovia").  Dough Co. is a guarantor under the loan agreement.

74. Upon information and belief, the Archway Entities are co-borrowers under a second lien Term Loan and Security Agreement, dated January 28, 2005, with Catterton.  Dough Co. is a guarantor under the loan agreement.  The credit facility is comprised of second lien term loans in the original principal amount of $20 million.  The loan facility has subsequently been amended. The Archway Entities are also co-borrowers under a Subordinated Term Loan and Security Agreement, dated January 28, 2005, with Catterton.  Dough Co. is a guarantor under the subordinated loan facility. The credit facility is comprised of subordinated loan terms in the original principal amount of $35 million. The subordinated facility was subsequently amended.

75. All significant decisions involving the management of Archway Entities were made by Defendants Catterton and/or Insight, who controlled the board of directors of the Archway Entities.

76. Upon information and belief, Defendants Catterton and Insight did not observe any corporate formalities in their management of Archway Entities.  All financial accounting was prepared on a consolidated basis for Defendant Archway without any separate balance sheets or financial information for the other Archway Entities.

77. Upon information and belief, Defendant Archway entered directly into a number of collective bargaining agreements with unions on behalf of all the Archway Entities.

78. Upon information and belief, Defendant Archway entered directly into contractual agreements, including agreements for the manufacture, production and transportation of Archway products for all the Archway Entities.

79. Upon information and belief, Defendant Archway was never compensated for services it provided to the other Archway Entities.

80. Upon information and belief, the Defendant Archway, under the direction of Catterton, utilized the services and employees of the other Archway Entities, such as accounting, sales, information technology, payroll and office support, without paying any compensation for those services.

81. Upon information and belief, Keith Roberts, a Certified Public Accountant hired by the Archway Entities in 2007 to assist in preparing financial statements for Archway Entities, reported to Insight.

82. Upon information and belief, in August 2008, the Archway Entities and Catterton, along with Wachovia, discussed a potential sale of some of Archway's assets.

83. Upon information and belief, in 2008, Catterton and Insight, in order to obtain additional funding for the Archway Entities from Wachovia, managed the business and financial accounting of the Archway Entities in a manner that gave rise to claims of impropriety leveled in the U.S. Bankruptcy Court, District of Delaware proceedings of Archway Cookie's LLC *et al*. Case no. 08-12323-CSS. *See* Complaint, *Official Committee of Unsecured Creditors of Archway Cookies LLC, et al., on behalf of the Debtors' Estates, v. Catterton Partners V, L/P., Catterton Partners V Offsore, L.P., Catterton Coinvest I, L.L.C., Archway & Mother's Cookies Co., Inc., Dough Co., Insight Group Holdings, Inc., James Micahel Chu, William J. Lynch, Craig H. Sakin, Nikhil K. Thukral, Mark Berwick, George Knobloch, Keith R. Lively, Mark Multer, Donald Stanners; and John Does and XYZ Companies 1-10*. A.P. no. 09-50037-CSS.

84. Upon information and belief, faced with the Archway Entities' losses and lack of funding, Catterton, the sole shareholder of the Archway Entities, together with its management

14

arm, Defendant Insight, made the decision to shut down Archway Cookie's LLC and Mother's Cake & Cookie Company.

85. Defendants ordered the mass layoffs and/or plant closings that occurred on or about October 3, 2008 at the Facilities, as those terms are defined by 29 U.S.C. § 210l(a)(2).

86. The mass layoffs or plant closings at the Facilities resulted in "employment losses," as that term is defined by 29 U.S.C. §2101(a)(2) for at least fifty of Defendants' employees as well as thirty-three percent (33%) of Defendants' workforce at the Facilities, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01(a)(8).

87. The Plaintiffs and the Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs or plant closings ordered by Defendants at the Facilities.

88. The Plaintiffs and the Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 210l(a)(5).

89. Defendants were required by the WARN Act to give the Plaintiffs and the Class Members at least 60 days advance written notice of their terminations.

90. Defendants failed to give the Plaintiffs and the Class members written notice that complied with the requirements of the WARN Act.

91. The Plaintiffs and each of the Class Members, are "aggrieved employees" of the Defendant as that term is defined in 29 U.S.C. § 2104 (a)(7).

92. Defendants failed to pay the Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations, and failed to make the pension and 401(k)

15

contributions and provide employee benefits under COBRA for 60 days from and after the dates of their respective terminations.

93. The relief sought in this proceeding is equitable in nature.

### **Violation of California Labor Code - § 1400 *et seq*.**

94. Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

95. The California Class Plaintiff and similarly situated employees who worked at or reported to Defendants' facilities in California (the California Facilities"), and other "covered establishments," are former "employees," of Defendants as defined in Labor Code § 1400(h).

96. Defendants terminated the employment of California Class Plaintiff and other similarly situated employees, pursuant to a "mass layoff," "relocation" or "termination" as defined in Labor Code § 1400(d-f) on or about October 3, 2008 or thereafter.

97. At all relevant times, Defendants were an "employer" as defined in Labor Code § 1400(b).

98. Defendants violated Labor Code § 1401 by ordering a "mass layoff," "relocation" or "termination" in California without giving written notice at least 60 days before the order took effect to (1) the employees affected by the order and (2) the Employment Development Department, the local workforce investment board, and the chief elected official of each city and county government within which the mass layoff, relocation or termination occurred. The "mass layoff," "relocation" or "termination" was not necessitated by a physical calamity or act of war.

99. As a result of Defendants' violation of Labor Code § 1401, the other similarly situated California employees are entitled to damages under c(a) in an amount to be determined.

100.  As a result of Defendants' violation of Labor Code § 1401, Defendants are subject to a civil penalty of not more than five hundred dollars ($500) for each day of the violation, under Labor Code § 1403.

101.  The California Class Plaintiff has incurred and the other similarly situated employees will incur attorneys' fees in prosecuting this claim and are entitled to an award of attorneys' fees under Labor Code § 1404.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief as against Defendants, jointly and severally:

A.  Certification of this action as a class action;

B.  Designation of the Plaintiffs as the Class Representatives;

C.  Appointment of the undersigned attorneys as Class Counsel;

D.  A judgment in favor of the Plaintiffs and the other similarly situated former employees equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other COBRA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104 (a)(1)(A) and the California Labor Code § 1402(a); and

E.  Such other and further relief as this Court may deem just and proper.

DATED:  November 13, 2009

/s/ Jack A. Raisner
Jack A. Raisner, Esq. (phv03566)
René S. Roupinian, Esq. (phv03565)
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY  10016
Telephone: (212) 245-1000
Facsimile:  (212) 977-4005
jar@outtengolden.com
rroupinian@outtengolden.com

Deborah McKenna (ct17236)
OUTTEN & GOLDEN LLP
Four Landmark Square, Suite 201
Stamford, CT 06901
Telephone: (203) 363-7888
Facsimile:  (203) 363-0333
dlm@outtengolden.com

*Attorneys for Plaintiffs and the putative Class*