UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY AUSTEN, ET AL., | : |
| | : |
|     Plaintiffs, | : |
| | : |
| v. | :   NO. 3:09CV1257 (MRK) |
| | : |
| CATTERTON PARTNERS V, LP, ET AL., | : |
| | : |
|     Defendants. | : |

## RULING AND ORDER

This case arises out of the October 2008 bankruptcy of three related companies that were in the business of making and distributing cookies – Defendant Archway & Mother's Cookies, Inc., a.k.a. Dough Co. ("Dough"), as well as non-parties Archway Cookies LLC and Mother's Cake & Cookie Co. – collectively, the "Archway Entities." In connection with the bankruptcy, the Archway Entities' facilities were closed and their employees lost their jobs. Plaintiffs are two of those employees, and they bring this action on behalf of themselves and other similarly situated former employees of the Archway Entities. Specifically, Plaintiffs claim that Defendants failed to provide 60-days advance notice of their termination in violation of the Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. §§ 2101 *et seq*., and California Labor Code §§ 1400 *et seq*. ("Cal-WARN Act"), and they seek damages under those statutes.[1] *See* Second Am. Compl. [doc. # 62].

---

[1] The other Defendants in this case, in addition to Dough, are Catterton Partners V, LP; Catterton Partners V Offshore, LP; and Catterton Coinvest I, LLC – collectively "Catterton" – as well as Insight Holdings LLC ("Insight"). Plaintiffs allege that Catterton owned the Archway Entities through its control of 100% of Dough's stock, and that Insight was the management firm through which Catterton operated the Archway Entities.

Pending before the Court is Plaintiffs' Motion for Class Certification and Other Relief [doc. # 31]. Specifically, Plaintiffs seek certification of a class defined as follows:

> Persons who worked at or reported to one of the Archway Facilities and were terminated without cause on or about October 3, 2008, within 30 days of October 3, 2008, or in anticipation of, or as the foreseeable consequence of, the mass layoff or plant closings on or about October 3, 2008, who were not given sixty days advance written notice of their terminations, who are affected employees, within the meaning of 29 U.S.C. § 2101(a)(5), and who have not filed a timely request to opt-out of the class . . . ."

Mem. of Law in Supp. of Pls.' Mot. for Class Cert. and Other Relief ("Pls.' Mem.") [doc. # 32] at 7. Defendants argue that the class should not be certified because common questions of fact and law do not predominate over individualized issues, as required by Rule 23(b)(3) of the *Federal Rules of Civil Procedure*. Specifically, while Defendants do not object to certifying a class composed of the approximately 375 individuals who worked at the Archway facilities that had more than 50 employees – the Archway Headquarters in Battle Creek, Michigan (the "Battle Creek Headquarters") and the Bakery in Ashland, Ohio (the "Ashland Bakery") – they argue that all other Archway facilities employed fewer than 50 people, and thus are not subject to the WARN Act. Defendants further assert that any attempt to apply the WARN Act to those individuals – the approximately 300 "remote employees" – will require individualized inquiries, making class certification inappropriate.

The Court held oral argument on the pending motion on May 24, 2010, and allowed the parties to file supplemental briefs on the question of class certification for the remote employees. After carefully considering the parties' briefs and arguments, the Court concludes that it does not have enough information to certify the class at this time, and therefore DENIES Plaintiffs' Motion for Class Certification and Other Relief [doc. # 31] without prejudice to renewal. In declining to certify the class for the time being, the Court makes no determination on the merits, but simply

2

concludes that it is not clear at this stage whether individualized inquiries for each remote employee will be necessary to determine Defendants' liability under the WARN Act. Therefore, Plaintiffs have not yet met their burden of showing, by a preponderance of the evidence, that common questions predominate over individualized ones, at least with respect to the remote employees. Plaintiffs may very well be able to make such a showing after they have had a chance to take discovery on class issues, and the Court will consider a renewed motion for class certification after Plaintiffs have completed such discovery.

## I.

The Court presumes that the parties are familiar with the facts and procedural history of this case, and does not recite them here. Readers wishing to familiarize themselves with the background of this case are referred to the Court's decision denying Defendants' motions to dismiss. *See Austen v. Catterton Partners V, LP*, ___ F. Supp. 2d ___, 2010 WL 625389 (D. Conn. Feb. 17, 2010).

The WARN Act prohibits employers of 100 or more employees from ordering "a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order." 29 U.S.C. § 2102(a); *see also Cashman v. Dolce Int'l/Hartford, Inc.*, 225 F.R.D. 73, 78 (D. Conn. 2004). Failure to provide a WARN Act notice subjects an employer to potential civil liability and civil penalties. Employers are potentially liable to each aggrieved employee (who suffers an employment loss as a result of the closing or layoff) for back pay and for benefits under an employee benefit plan, including the costs of medical expenses incurred during the employment loss, all calculated for the period of the WARN Act violation up to a maximum of 60 days. *See* 29 U.S.C. § 2104(a)(1). These specific monetary remedies are the exclusive remedies for violating the WARN Act.

This Court has previously noted that "[b]ecause WARN Act lawsuits are permitted only against employers with more than 100 employees, WARN actions are particularly amenable to class-based litigation." *Cashman*, 225 F.R.D. at 90. Nonetheless, the Court must still ensure that the requirements of Rule 23 of the *Federal Rules of Civil Procedure* are met before it certifies a WARN class. This involves a two-step analysis. First, Plaintiffs must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. *See Cashman*, 225 F.R.D. at 90. Second, "Plaintiffs must show that the proposed class qualifies under at least one of the subsections of Rule 23(b)." *Id*. Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" – the "predominance" prong – "and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" – the "superiority" prong. Fed. R. Civ. P. 23(b)(3). "The Second Circuit has instructed district courts that Rule 23 is to be given a liberal rather than a restrictive interpretation"; nonetheless, it remains Plaintiffs' burden to show that the requirements of Rule 23 are satisfied. *Cashman*, 225 F.R.D. at 90.

In *In re Initial Public Offering Securities Litigation* ("*In re IPO*"), 471 F.3d 24 (2d Cir. 2006), the Second Circuit instructed district courts that they should not certify a class unless they conclude that Plaintiffs have satisfied each requirement of Rule 23 by a preponderance of the evidence. *Id*. at 27; *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier*, 546 F.3d 196, 202 (2d Cir. 2008) ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."). In practice, this means that:

(1) a district judge may certify a class only after making determinations that each of

>the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re IPO*, 471 F.3d at 41.  Furthermore, the Notes of the Advisory Committee on Civil Rules regarding the 2003 amendments to Rule 23 state that "[t]he provision that a class certification 'may be conditional' is deleted.  A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23 advisory committee notes.  Therefore, in order to certify the proposed class the Court must be able to determine that common questions will predominate over individualized ones in accordance with Rule 23(b)(3).  As discussed below, the Court does not have before it the facts necessary to make such a determination at this stage.

## II.

Defendants do not contest certification of a class consisting of the former employees at the Battle Creek Headquarters and the Ashland Bakery.  *See* Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Class Cert. ("Defs.' Mem.") [doc. # 106] at 9.  It also became clear at oral argument that Defendants do not dispute that Plaintiffs' proposed class satisfies all of the requirements of Rule 23(a), as well as the superiority prong of Rule 23(b)(3).  Therefore, the only issue before the Court is whether the predominance prong of Rule 23(b)(3) is satisfied as to the 300 remote employees.

5

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001), *abrogated on other grounds by In re IPO*, 471 F.3d 24; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Visa Check/MasterMoney*, 280 F.3d at 136 (citation and quotation marks omitted).

> Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions. . . . In determining whether common questions of law and fact predominate, the inquiry is directed primarily toward whether the issue of liability is common to all members of the class.

*Darquea v. Jarden Corp.*, No. 06 Civ. 722 (CLB), 2008 WL 622811, at *5 (S.D.N.Y. Mar. 6, 2008). With Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617 (internal quotation marks and citation omitted).

There is no question that all of the proposed class members share many issues in common, including whether they were employees of Defendants, whether Defendants terminated them without notice in violation of the WARN Act, whether Defendants were a "single employer" for purposes of WARN Act liability,[2] and the applicability of several exceptions and defenses to the Act. Furthermore, if liability is established, the calculation of damages under the WARN Act is fairly straightforward for the class as a whole. *See Cashman*, 225 F.R.D. at 95. Nonetheless, Defendants

---

[2] The Court discussed this issue at length in its ruling denying Defendants' motion to dismiss.

6

argue that for the remote employees, an individualized inquiry will be required that will predominate over all of these common issues. The Court is not sure that Defendants are correct, but it is Plaintiffs' burden to show that the predominance requirement of Rule 23(b)(3) has been satisfied, and they have not done so at this time.

### III.

As previously mentioned, the WARN Act requires certain employers to give 60 days' notice to "affected employees" before a "plant closing" or "mass layoff." If a covered employer fails to give the required notice, its employees may seek damages in an amount up to 60 days' pay and benefits. *See* 29 U.S.C. § 2104(a). The statute defines "plant closing" as:

> the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees . . . .

29 U.S.C. § 2101(a)(2). And "mass layoff" is defined as:

> a reduction in force which –
> (A) is not the result of a plant closing; and
> (B) results in an employment loss at the single site of employment during any 30-day period for –
> (i)(I) at least 33 percent of the employees (excluding any part-time employees); and
> (II) at least 50 employees (excluding any part-time employees); or
> (ii) at least 500 employees (excluding any part-time employees) . . . .

29 U.S.C. § 2101(a)(3). Finally, "affected employees" are defined as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5).

Thus, in order to trigger WARN Act liability, a plant closing or mass layoff must occur at a site with at least 50 employees. However, in certain limited circumstances, sites or employees can

be aggregated together to reach that threshold.  The United States Department of Labor (DOL) WARN Act regulations provide some guidance on when locations can be aggregated together into a "single site" for purposes of triggering liability under the Act:

> (1) A single site of employment can refer to either a single location or a group of contiguous locations.  Groups of structures which form a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment.
>
> (2) There may be several single sites of employment within a single building, such as an office building, if separate employers conduct activities within such a building.  For example, an office building housing 50 different businesses will contain 50 single sites of employment.  The offices of each employer will be its single site of employment.
>
> (3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment.  An example is an employer who manages a number of warehouses in an area but who regularly shifts or rotates the same employees from one building to another.
>
> (4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site.  For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.
>
> (5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate workforces are considered separate single sites of employment.
>
> . . .
>
> (8) The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply.  The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

20 C.F.R. § 639.3(I).

There is no Second Circuit case addressing the DOL regulations, but the Sixth Circuit has

offered a useful interpretation:

> Although no bright line test exists, the plain language of the statute and regulations makes clear that geographic proximity provides the touchstone in determining what constitutes a "single site." Contiguous facilities or those in close geographic proximity are generally single sites of employment and geographically separate facilities are generally separate sites. . . . The statute and regulations plainly focus on whether the resulting job loss will be concentrated in one geographic area.

*Teamsters Local Union 413 v. Driver's, Inc.*, 101 F.3d 1107, 1109 (6th Cir. 1996) (internal citation omitted). "Once the contiguous/noncontiguous geographic determination is made, the operational, managerial and labor variables can defeat or reinforce the presumptions established by the proximity and contiguity factors. . . . Noncontiguous facilities may be single sites only if there is some connection between the sites beyond common ownership, such as a regular practice of sharing of equipment or employees." *Id.* at 1110 (internal citation omitted); *see also Bledsoe v. Emery Worldwide Airlines*, No. 3:02cv069, slip op. at 12-15 (S.D. Ohio Mar. 24, 2008). In general, other circuits appear to use the same approach as the Sixth Circuit. *See, e.g.*, *Bader v. N. Line Layers, Inc.*, 503 F.3d 813, 817-19 (9th Cir. 2007).

Finally, in certain circumstances, "mobile employees" may be counted as employees of a single site for purposes of reaching the 50-employee threshold. Again, the DOL regulations offer guidance:

> (6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

20 C.F.R. § 639.3(I).

Defendants claim that they have numerous small warehouses, offices, and "cages"[3] located across the country, as well as a small distribution center in Ashland that was approximately three miles from the Ashland Bakery. These are the sites where the remote employees worked. *See* Decl. of Mark Berwick ("Berwick Decl.") [doc. # 106-1]. These remote sites were generally staffed by a few sales managers, who supervised the drivers assigned to their particular facility. *See id*. ¶ 7. According to Defendants, there was little overlap of employees between facilities, and none of the remote sites had 50 employees or more. *See id*. ¶¶ 6, 8. If Defendants are correct, Plaintiffs would have to show that the remote locations can be aggregated together (or aggregated with the Battle Creek or Ashland site) as a "single site" with at least 50 employees, or that the remote employees were "mobile employees" who can be assigned to a site with at least 50 employees. Therefore, Defendants argue that determining whether those employees are covered by the WARN Act will require an individualized application of the DOL "single site" and "mobile employee" factors for each remote employee. *See* Defs.' Mem. [doc. # 106] at 13-19.

In general, Plaintiffs do not disagree with Defendants' characterization of the WARN Act and the law applicable to the remote employees. However, in their Reply [doc. # 115] in support of their motion, Plaintiffs argue that as a matter of law, once the WARN Act is triggered by a plant closing or mass layoff, any "downstream" employee who loses his or her job as a result of that closing or layoff is covered by the Act's notice requirements, whether or not such employee actually worked at the facility where the closing or layoff occurred. *See* Pls.' Reply to Defs.' Opp'n to Mot. for Class

---

[3] A "cage" is a storage unit, driver's garage, or other small facility, "typically located in less dense, sometimes rural areas, often a long distance from the nearest warehouse," where product was dropped for a driver to retrieve and deliver. Decl. of Mark Berwick ("Berwick Decl.") [doc. # 106-1] ¶ 17.

Cert. ("Pls.' Reply") [doc. # 115] at 13-19. If this argument is correct as a matter of law, then certification of the proposed class would be appropriate. However, the Second Circuit has not addressed this question, and the few courts that have considered this issue have reached divergent conclusions. *Compare In re Jamesway Corp.*, No. 95B44821 (JLG), 1997 Bankr. LEXIS 825, at *53 (S.D.N.Y. Bankr. June 11, 1997) ("We find that the statute contemplates that notice be given to employees at the site of the mass layoff, and not to employees of other facilities who were not 'bumped' and who are not the object of a 'mass layoff' even though they were terminated as a consequence of the same conditions that caused the 'mass layoff' or 'plant closing.'"); *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 934-35 (5th Cir. 1994); *and In re APA Transp. Corp. Consol. Litig.* ("*APA Transport II*"), Civ. No. 02-3480 (GEB), 2006 WL 3534029, at *5 (D.N.J. Dec. 7, 2006), *with In re APA Transport Corp. Consolidated Litig.* ("*APA Transport I*"), No. Civ. 02-3480 WGB, 2005 WL 3077916, at *3 (D.N.J. Nov. 16, 2005); ("[T]here is support for Plaintiffs' counter-argument that employees at facilities with less than 50 full-time employees may be protected by the WARN Act. Where those employees are terminated as the consequence of layoffs at facilities with 50 or more employees, employees at the smaller facilities may be included in the plaintiff class."); *Amatuzio v. Gandalf Sys. Corp.*, 994 F. Supp. 253, 276 n.23 (D.N.J. 1998) ("The only legal requirement is that there be a causal link between the employee's termination and the plant closing. Neither does WARN limit 'affected' employees to those included in the fifty or more employees used to define a 'plant closing.' Once that definition is satisfied, any employee may qualify as an 'affected' employee, whether or not included in the group of employees used to define a 'plant closing.'"); *and Kirkvold v. Dakota Pork Indus., Inc.*, No. Civ. 97-4166, slip op. at 6-7 (D.S.D. Dec. 15, 1997) ("Applying the plain language of the statutes, the Court agrees with plaintiff that the determination

11

of what constitutes 'a single site of employment' is pertinent only to calculating whether a sufficient number of employees suffered an employment loss to satisfy the definition of a 'plant closing' for purposes of triggering WARN Act prtoection.").

Fortunately, neither party asks the Court to decide this legal issue at this stage, and the Court will gladly refrain from doing so. If necessary, the Court will reach this question in the context of a ruling on a renewed motion for class certification, after Plaintiffs have had an opportunity to conduct discovery pertaining to the remote employees.

With this legal issue aside, for the moment, Plaintiffs do not concede that the remote sites had fewer than 50 employees, and they argue that it may be possible to conduct the "single site" or "mobile employee" inquiries contemplated by the DOL regulations using generalized rather than individualized evidence. They also contend that even if individualized inquiries become necessary, they may be simple to conduct based on Archway's records. *See* Pls.' Reply [doc. # 115] at 11. In short, Plaintiffs argue that individualized inquiries may not be necessary, and that even if they are, they may be straightforward enough that common questions will still predominate over individualized questions.

Plaintiffs may very well be right. Unfortunately, however, at this point their argument is based on conjecture about what the evidence *may* show. Plaintiffs' counsel repeatedly admitted at oral argument that he does not know what the evidence will indicate regarding the remote employees because he has not yet conducted discovery on that question. Nonetheless, Plaintiffs urge the Court to grant class certification at this stage while reserving the right to remove the remote employees from the class if discovery reveals that individualized inquires will be necessary.

In essence, the Court is faced with two options. It can certify the proposed class, including

the remote employees, as Plaintiffs request, and then allow discovery to proceed and decertify the remote employees if it becomes necessary to do; or the Court can refuse to certify the class until after discovery regarding the remote employees. Essentially, the decision comes down to whether certification or discovery comes first. *In re IPO* provides the answer – the Court must make a determination that all of the requirements of Rule 23 are satisfied *before* it can certify the class. *In re IPO*, 471 F.3d at 41.

Plaintiffs invite the Court to turn *In re IPO* on its head and shirk its "'obligation' to resolve factual disputes relevant to the Rule 23 requirements and to determine whether the requirements are met, an obligation 'not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 38 (2d Cir. 2009) (quoting *In re IPO*, 471 F.3d at 41). The Court declines Plaintiffs' invitation. Before certifying the proposed class, the Court must be convinced, by a preponderance of the evidence, that common issues will predominate over individualized ones. Plaintiffs have not yet made such a showing for the remote employees, and the Court sees no reason to certify the class prematurely, before giving Plaintiffs the opportunity to take discovery. Therefore, their Motion for Class Certification [doc. # 31] is DENIED without prejudice.

## IV.

The Court denies Plaintiffs' motion for now, but it may very well certify the proposed class in the future, after Plaintiffs have had a chance to conduct discovery to determine whether individualized inquires will be necessary for the remote employees, or whether their WARN Act

claims can be resolved with more generalized proof.[4]  Furthermore, the Court will certainly certify a class consisting of the employees at the Battle Creek Headquarters and the Ashland Bakery, even if it ultimately concludes that certification is not appropriate for the remote employees.  The Court directs the parties to file a Joint Status Report by June 21, 2010, addressing the scope and proposed schedule for discovery regarding the remote employees, and including a deadline for Plaintiffs to renew their motion for class certification.

IT IS SO ORDERED

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **June 7, 2010**.

---

[4] During oral argument, Defendants argued that Plaintiffs had already been given an opportunity to take such discovery and had failed to do so, and therefore urged the Court to deny the motion for class certification *with* prejudice.  But the Court does not agree.  Its earlier Order [doc. # 51], which Defendants rely on, stated that "*Defendants* may commence discovery limited to written discovery, and the depositions of the proposed class representatives, limited to the issues relevant to Rule 23." Order [doc. # 51] (emphasis added).  The Order said nothing about Plaintiffs' discovery.