UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY AUSTEN, ET AL., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO. 3:09CV1257 (MRK) |
| | : | |
| CATTERTON PARTNERS V, LP, | : | |
| ET AL., | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM OF DECISION**

This lawsuit arises out of the October 2008 bankruptcies of three related cookie companies, which the Court refers to throughout this Memorandum of Decision as the Archway Entities. Following the bankruptcies, the Archway Entities closed their facilities and terminated their employees, including Plaintiffs Jeffrey Austen and David Icardi. Mr. Austen and Mr. Icardi claim that Defendants are liable under the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. §§ 2010 *et seq.*, and California Labor Code §§ 1400 *et seq.* ("Cal-WARN Act"), for failing to provide their employees with sixty days advance notice of the Archway Entities' plant closings.

Pending before the Court is Defendant Insight LLC's ("Insight") Renewed Motion to Dismiss for Lack of Personal Jurisdiction [doc. # 95] pursuant to Rule 12(b)(2) of the *Federal Rules of Civil Procedure*. According to Plaintiffs, Defendants Catterton Partners V, LP; Catterton Partners V Offshore, LP; and Catterton Coinvest I, LLC – collectively "Catterton" – owned the Archway Entities. Mr. Austen and Mr. Icardi claim that Insight was the management firm Catterton hired to

1

operate the Archway Entities. *See* Plaintiff's Opposition to Insight Holdings, LLC's Renewed Motion to Dismiss [doc. # 126] at 7-8. Mr. Austen and Mr. Icardi further allege that Insight participated with Catterton in the decision to close the Archway Entities' facilities, and that Insight's principals traveled to Connecticut to plan the closings on one or more occasions in 2008. *See id.*

The purpose of this Memorandum of Decision is to resolve two purely legal issues raised by Insight's Motion to Dismiss in advance of an evidentiary hearing on the issue of personal jurisdiction over Insight. The Court will issue a separate scheduling order regarding the evidentiary hearing on the issue of personal jurisdiction. Because the Court agrees with Mr. Austen and Mr. Icardi regarding the purely legal issues raised in the motion, Insight's Renewed Motion to Dismiss [doc. # 95] is DENIED without prejudice to renewal following the evidentiary hearing.

**I.**

The Court takes the following facts – which are largely undisputed – from the Second Amended Class Action Complaint [doc. # 62], as supplemented by the parties' submissions on personal jurisdiction. The Court assumes familiarity with the other facts of the case. The Court has already discussed those facts at length in its decision denying Defendants' motions to dismiss for failure to state a claim. *See Austen v. Catterton Partners V, LP*, --- F. Supp. 2d ----, 2010 WL 625389 (D. Conn. Feb. 17, 2010).

Defendant Insight is a California limited liability company (LLC). Insight has three principals: Keith R. Lively, the owner and President; Donald Stanners; and Mark Berwick. Between 2000 and 2005, Messrs. Lively, Stanners, and Berwick did work on behalf of the Archway Entities outside of Connecticut. All three received compensation for their work. During those years, Messrs. Lively, Stanners, and Berwick regularly communicated with Catterton in telephone calls between

Insight's California offices and Catterton's Connecticut offices.

Between 2004 and 2008, each of them also traveled to Connecticut two or three times a year – and indeed, as many as five times in a single year – to attend meetings of the Archway Entities' boards in Connecticut. Messrs. Lively, Stanners, and Berwick all agreed in telephone calls between California and Connecticut to join the Archway Entities' boards in 2005, but their agreements were apparently never committed to writing. Mr. Lively agreed to serve as the Chairman and Chief Executive Officer of the Archway Entities; Mr. Stanners agreed to become the Chief Financial Officer and Secretary of the Archway Entities; and Mr. Berwick agreed to become the Treasurer of the Archway Entities. Each of them also continued to serve as a principal of Insight.

In the months before the Archway Entities went bankrupt and fired their employees, Insight principals traveled to Connecticut for business meetings with Catterton on at least two occasions. On at least one of those occasion**s,** Insight principals apparently met to discuss the closing of the Archway Entities. First, on July 23, Mr. Stanners traveled to Connecticut to attend a meeting at Catterton's Greenwich offices. The purpose of the first meeting is unknown at this time. Second, on September 11, 2008, Messrs. Stanners and Lively traveled to Connecticut to attend further meetings at Catterton's Greenwich offices. At 10:13 pm on September 11, 2008, Craig Sakin – a Managing Partner and Senior Advisor at Catterton as well as the Vice President of the Archway Entities – wrote the following email message to representatives of the Alvarez & Marsal consulting firm and to several of his Catterton colleagues:

> Don and Keith from Insight were in our offices for most of today. As you can imagine, we had much to discuss as it relates to Archway. Sparing you the laborious detail, which I can give you tomorrow by phone as an update, we believe we have reached a working format where they can be helpful in bringing about a decent result. We discussed, among other things, roles, responsibilities, timing and options for both the near term issues and the longer term. I can call u in the am for an

> update, maybe David H can be on as well since he is traveling and it would be helpful to get both your input. We would hope to get all on the same page so we can organize quickly given all that will need to get done.

Plaintiff's Opposition to Insight Holdings, LLC's Renewed Motion to Dismiss, Exhibit A [doc. # 126-1] at 1. Twenty-five days later, on October 6, 2008, the Archway Entities filed for Chapter 11 bankruptcy and terminated all their employees, allegedly without the sixty days notice required by California and federal law.

Insight has consistently contested this Court's exercise of personal jurisdiction over it. On September 21, 2009, the same day on which Insight filed a Notice of Appearance [doc. # 25], Insight filed a Notice Regarding Time to Respond to Plaintiffs' Complaint [doc. # 26] in which it indicated that it intended to file a motion to dismiss for lack of personal jurisdiction. On October 14, 2009, Insight filed a Motion to Dismiss [doc. # 38] for lack of personal jurisdiction.[1] On October 15, 2009, the Court held a telephone conference with the parties and directed the parties to confer on a schedule for limited discovery on the issue of personal jurisdiction. *See* Order dated October 15, 2009 [doc. # 42]. On November 9, 2009, the Court held a second telephone conference with the parties and ordered personal jurisdiction discovery completed by December 31, 2009. *See* Order dated November 9, 2009 [doc. #57]. On December 22, 2009, the Court denied Insight's motion to dismiss for lack of personal jurisdiction without prejudice to renewal and stayed personal jurisdiction discovery until February 24, 2010. *See* Order dated December 22, 2009 [doc. #75]. Insight renewed its motion on February 25, 2010. *See* Insight's Renewed Motion to Dismiss [doc.

---

[1] By the same motion, Insight also sought dismissal of the Complaint [doc. #1] for failure to state a claim pursuant to Rule 12(b)(6). *See* Motion to Dismiss [doc. # 38]. After permitting Plaintiffs to amend their Complaint twice, the Court eventually denied the portions of Insight's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint [doc. #71] based on failure to state a claim, along with Catterton's Renewed Motion to Dismiss [doc. #69]. *See Austen*, --- F. Supp. 2d at ----, 2010 WL 625389, at *1.

4

# 95].

## II.

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The nature of the plaintiff's obligation depends on the procedural posture of the litigation. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). Where, as here, the Court has authorized limited discovery on the issue of personal jurisdiction and the parties have conducted some limited discovery, the plaintiff's *prima facie* averment of facts sufficing to establish jurisdiction over the defendant must also be factually supported. *See id.* at 197.

To determine whether personal jurisdiction over a particular defendant exists, the Court must conduct a two-part inquiry. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). First, the Court must ask whether jurisdiction exists under Connecticut law. See *id.* Here, Plaintiffs base personal jurisdiction over Insight on one of Connecticut's two long-arm statutes. *See* Conn. Gen. Stat. § 52-59b(a)(1). That statute provides that "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association . . . who in person or through an agent: . . . [t]ransacts any business within the state . . . ." *Id.*

Second, if the Court determines that personal jurisdiction exists under Connecticut law, the Court must next ask whether its exercise of personal jurisdiction comports with due process requirements. *See Grand River*, 425 F.3d at 165. Plaintiffs have the burden of proving that Insight had minimum contacts with Connecticut such that the maintenance of this suit against Insight in

Connecticut will not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). To determine whether this is so, the Court must apply a two-step analysis. *See Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008). As an initial matter, the Court must determine whether Insight had minimum contacts with Connecticut such that Insight should have reasonably anticipated being haled into a court in this State. *See id.* Next, the Court must determine whether its assertion of personal jurisdiction over Insight would be reasonable under the circumstances. *See id.*

### III.

The first legal question the Court must resolve is which of two Connecticut long-arm statutes applies to foreign limited liability companies, or LLCs. Plaintiffs argue that § 52-59b(a)(1) permits this Court to exercise personal jurisdiction over Insight. *See* Plaintiff's Opposition to Insight Holdings, LLC's Renewed Motion to Dismiss [doc. # 126] at 2-3. Insight counters that 52-59b(a) does not reach foreign LLCs. *See* Reply Memorandum of Law of Defendant Insight Holdings, LLC in Further Support of its Motion to Dismiss [doc. # 134] at 1-3. Insight asserts that § 33-929(e)-(f) – which applies to foreign corporations – is the only Connecticut long-arm statute that reaches foreign LLCs. *See id.* The Court cannot avoid resolving this threshold legal dispute; as Plaintiffs apparently concede, § 33-929(e)-(f) does not allow them to sue Insight in a Connecticut court.

Whether § 52-59b(a) applies to foreign LLCs is a question of Connecticut law, and the Court's analysis thus must be guided by Connecticut case law. *See Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 82 (2d Cir. 1995). To the extent that the case law is unsettled, this Court's "role as a federal court sitting in diversity is not to adopt innovative theories that may distort

6

established state law." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 106 (2d Cir. 2001) (alteration and internal quotation marks omitted). Instead, the Court's only role is to "predict how the state's highest court would resolve" any identified uncertainty or ambiguity. *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 297 (2d Cir. 2000) (internal quotation marks omitted). The Court must "give the fullest weight to pronouncements of the state's highest court . . . while giving proper regard to relevant rulings of the state's lower courts." *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir. 1999) (internal quotation marks omitted).

**A.**

The limited liability company is a relatively new form of business organization. *See generally* Wayne M. Gazur & Neil M. Goff, *Assessing the Limited Liability Company*, 41 Case W. Res. L. Rev. 387 (1991). In 1977, the Wyoming legislature authorized the creation of LLCs for the first time. *See* Wyo. Stat. §§ 17-15-101 to -136 (1977); Gazur & Goff, 41 41 Case W. Res. L. Rev. at 389. Five years later, Florida adopted an LLC statute modeled on Wyoming's LLC statute. *See* Fla. Laws 1982, ch. 82-177. Although the LLC was created for the purpose of ensuring both the federal income tax advantages associated with partnerships and state law limited liability for all participants in a venture, the United States Department of the Treasury did not consistently treat LLCs as partnerships for tax purposes before 1988. *See* Gazur & Goff, 41 Case W. Res. L. Rev. at 390. In 1988, however, the Internal Revenue Service issued a ruling classifying Wyoming LLCs as partnerships for federal taxation purposes. *See* Rev. Rul. 88-76, 1982-2 C.B. 360. Many other States quickly enacted LLC statutes. *See* Robert R. Keating et al., *The Limited Liability Company: A Study of the Emerging Entity*, 47 Bus. Law. 375, 384 (1992). By June 1993, thirty-three States had enacted such legislation. *See* Douglas R. Nani, *The Rhode Island Limited Liability Company*

*Act*, 27 Suffolk U. L. Rev. 355, 362 n.56 (1993).

Connecticut enacted its own Limited Liability Company Act in 1993. *See* 1993 Conn. Pub. Acts 93-267, codified as amended at Conn. Gen. Stat. §§ 34-100 to -242. At the time the Limited Liability Company Act was enacted, there were two different long-arm jurisdiction provisions on the statute books in Connecticut. Section 52-59b(a) was the long-arm statute applicable to nonresident individuals and foreign partnerships.[2] Section 33-411 – the predecessor to the current § 33-929(e)-(f) – applied only to foreign corporations. Although the Limited Liability Company Act provided for the formation of LLCs in Connecticut, *see* Conn. Gen. Stat. § 34-120, and provided rules for the registration of foreign LLCs in Connecticut, *see id.* § 34-223, the legislature declined to specify how courts in Connecticut should treat foreign LLCs for long-arm jurisdiction purposes. The legislature has not yet corrected that omission by amending § 52-59b(a); § 33-929(e)-(f); or any section of the Limited Liability Company Act.

The Supreme Court of Connecticut has not yet had occasion to decide whether § 52-59b(a) or § 33-929(e)-(f) is the long-arm statute that applies to foreign LLCs. Likewise, the Appellate Court of Connecticut has never considered that question. The only courts that have answered the question have been Connecticut trial courts, *see, e.g.*, *Technipower, LLC v. Mustang Vacuum Sys., LLC*, No. CV095007190S, 2009 WL 3645708, at *2-3 (Conn. Super. Oct. 8, 2009); and federal district courts applying Connecticut's long-arm statutes. *See, e.g.*, *Screen Tech, Inc. v. Carolina Precision Plastics, LLC*, No. 3:03CV975 (SRU), 2006 WL 197360, at *2 (D. Conn. Jan. 25, 2006). When all the lower courts that have interpreted a particular statutory provision have agreed about

---

[2] In 2004, the legislature amended § 52-59b(a) to apply to foreign voluntary associations as well as to nonresident individuals and foreign partnerships. *See* Conn. Pub. Acts 04-240 § 25.

8

how to interpret a state law provision, it may be safe for a federal court to assume that the Connecticut Supreme Court will follow those lower court decisions. *See, e.g.*, *Avedisian v. Quinnipiac Univ.*, No. 09-3088-CV, 2010 WL 2838540, at * 1 (2d Cir. July 21, 2010). However, the lower courts have reached divergent conclusions about which Connecticut long-arm provision applies to foreign LLCs.

**B.**

The first Connecticut Superior Court decision to address the long-arm treatment of LLCs did not recognize the legislature's omission in failing to include LLCs in § 52-59b(a) or § 33-929(e)-(f). *See New England Nat'l, LLC v. Kabro of East Lyme, LLC*, No. 550014, 2000 WL 254590 (Conn. Super. Feb. 23, 2000). In *New England National*, the court simply assumed – without providing any reasoning – that foreign LLCs were subject to personal jurisdiction under § 52-59b(a). *See id.* at *3 ("Although the plaintiffs do not provide the court with the statutory basis on which they rely for jurisdiction, the only statute apparently applicable is General Statutes § 52-59b(a)(1)."). Applying § 52-59b(a)(1), the court granted a motion to dismiss for lack of personal jurisdiction as to one LLC defendant, but denied the motion as to another LLC defendant. *See id.* at *3-4.

However, other Superior Courts that confronted the issue in 2003 noted the ambiguity left by the legislature. *See Nadler v. Grayson Constr. Co.*, No. CV020190015S, 2003 WL 1963158 (Conn. Super. Apr. 15, 2003); *Hartford Fire Ins. Co. v. United Restoration, LLC*, No. CV02081357, 2003 WL 1962864 (Conn. Super. Apr. 4, 2003). The *Hartford Fire Insurance* court acknowledged that the *New England National* court had applied § 52-59b(a) to an LLC, but reasoned that *New England National* did not necessarily preclude the application § 33-929(e)-(f) to LLCs. *See id.* at *3. The *Hartford Fire Insurance* court went on to hold that it had personal jurisdiction over the

9

defendant LLC under *both* § 52-59b(a) and § 33-929(f). *See id.* at *4-5. By contrast, the *Nadler* court concluded that "§ 52-59b is the long-arm jurisdiction statute applicable to foreign limited liability companies" while recognizing that "the issue is not free from doubt." *See* 2003 WL 1963158, at *5.

In the three years following *Nadler* and *Hartford Fire Insurance*, another Connecticut Superior Court, *see Horniatko v. Riverfront Ass'n, LLC*, No. CV 044000332S, 2005 WL 1671543, at *2 (Conn. Super. June 21, 2005), and a Connecticut federal district court, *see Screen Tech*, 2006 WL 197360 at *2, applied § 52-59b(a) to foreign LLCs. During those years, the only time any court in Connecticut applied § 33-929(e)-(f) instead of § 52-59b(a) was in a case in which both parties assumed that § 33-929(e)-(f) applied to the LLC defendant. *See Swain v. Am. Capital Strategies, Ltd.*, No. X04CV030103924S, 2004 WL 1966013, at *3 (Conn. Super. Aug. 4, 2004). Not only did the parties in *Swain* apparently overlook the argument that § 52-59b(a) might apply to the foreign LLC defendant, but the *Swain* court also erroneously referred to the LLC defendant as a "limited liability corporation" that was "incorporated in Delaware." *Id.* at *3, *7.[3]

Four years after *Hartford Fire Insurance*, however, a judge of the Southern District of New York presiding over a Connecticut case as part of a multi-district litigation held for the first time that § 33-929(e)-(f) is the *only* Connecticut long-arm statute that applies to LLCs. *See In re Bayou Hedge Fund Inv. Lit.*, 472 F. Supp. 2d 534, 537-38 (2007). *In re Bayou* is the only decision this Court is aware of in which a court outside Connecticut has had to resolve the issue presented in this case**.** Like the *Swain* court, the *In re Bayou* court erroneously referred to the New York LLC

---

[3] Under Delaware, as under Connecticut law, the acronym "LLC" stands for "limited liability company," not "limited liability corporation." Delaware's Limited Liability Company Act (DLLCA) became effective on October 1, 1992. *See* 68 Del. Laws ch. 434, §§ 1-2 (1992), codified as amended at 6 Del. Code Ann. tit. 6, §§ 18-101 *et seq.* (2010)

defendant as a "limited liability corporation," *see id.* at 537, rather than as a "limited liability company" – the precise phrasing under both New York, *see, e.g.*, N.Y. Lim. Liab. Co. Law § 204 (McKinney 2010), and Connecticut law. *See, e.g.*, Conn. Gen. Stat. § 34-100. Further, the *In re Bayou* court relied in its decision a case from this district in which the defendant was not an LLC at all, but a corporation. *See* 472 F. Supp. 2d at 537 (citing *Lechner v. Capital Group Cos.*, No. 05-CV1410, 2006 WL 1525967, at *2 (D. Conn. May 26, 2006). The Court therefore does not find *In re Bayou* persuasive.

The Southern District of New York's decision in *In re Bayou* has not had a significant impact on the Connecticut Superior Court's interpretation of Connecticut's two long-arm statutes. No state court in Connecticut has ever cited *In re Bayou,* and since that decision, Connecticut Superior Courts have gone on to apply § 52-59b(a) to LLCs in at least two more cases. *See Technipower*, 2009 WL 3645708, at *3; *Pasquariello Elec. Corp. v. Nyberg*, No. CV085024983, 2009 WL 3739445, at*3 (Conn. Super. Oct. 7, 2009). *In re Bayou* has, however, had an impact on federal courts' interpretation of Connecticut's long-arm statutes. On one occasion, a judge in this district relied on *In re Bayou* to hold that § 33-929(e)-(f) applies to LLCs and that § 52-59b(a) does not. *See Halo Tech Holdings, Inc. v. Cooper*, No. 3:07CV489 (AHN), 2008 WL 877156, at *8 (D. Conn. Mar. 26, 2008). On two other occasions, a judge in this district has cited *In re Bayou* but ultimately avoided resolving the question presented here. *See RJM Aviation Assocs., Inc. v. GP Aviation Servs., LLC*, No. 3:06CV2007 (CFD), 2008 WL 918538, at *3 (D. Conn. Mar. 28, 2008); *S&S Tech., Inc. v. Providence Inv. Mgmt., LLC*, No. 3:07CV484 (CFD), 2008 WL 691702 (D. Conn. Mar. 12, 2008).

## C.

Given the sparse reasoning in most of the decided cases regarding the long-arm jurisdiction

treatment of foreign LLCs under Connecticut law, and given the divergent views that have developed between state courts and federal courts, the Court finds that there is no controlling authority to guide its decision. Absent controlling authority, this Court is obligated to interpret § 52-59b(a) and § 33-929(e)-(f) according to the rules of construction that the Supreme Court of Connecticut uses when interpreting statutes. *See Morenz v. Wilson-Coker*, 415 F.3d 230, 236-37 (2d Cir. 2005). Before 2003, the Supreme Court of Connecticut followed an eclectic approach to statutory interpretation, considering not only the text, but also relevant extra-textual evidence of meaning, including legislative history, the statute's relationship to existing legislation, the circumstances of enactment, and the legislative policies the statute was designed to implement. *See, e.g.*, *State v. Courchesne*, 262 Conn. 537, 562-63 (2003). In 2003, however the legislature enacted Connecticut General Statues § 1-2z, which prohibits courts from considering extra-textual evidence when the text is plain and unambiguous, and does not yield absurd results. The Supreme Court of Connecticut now considers extra-textual evidence of meaning only after making a threshold determination that the plain meaning of a statute is ambiguous or yields absurd results. *See Bell Atlantic Nynex Mobile, Inc. v. Comm'r of Pub. Serv.*, 273 Conn. 240, 249-50 (2005); *see also* Abbe R. Gluck, *The States as Laboratories of Statutory Interpretation: Methodological Consensus and the New Modified Textualism*, 119 Yale L.J. 1750, 1791-99 (2010) (discussing recent changes in the statutory interpretation methodology used in Connecticut courts).

The Court believes that if the Supreme Court of Connecticut were to confront the issue presently before this Court – that is, whether § 52-59b(a) or § 33-929(e)-(f) is the Connecticut long-arm statute that applies to foreign LLCs – it would conclude that the relevant statutory provisions are ambiguous. Section 33-929(e)-(f) applies only to "foreign corporation[s]." By contrast, **§** 52-

59b(a) applies to "nonresident individual[s], foreign partnership[s] or foreign voluntary association[s]." LLCs do not fit easily into any of those categories. An LLC is surely not an individual, and because it has a legal existence separate from the persons who form it, it is also not a voluntary association. *See Black's Law Dictionary* 141 (9th ed. 2009) (defining an association as an "organization that is not a legal entity separate from the persons who compose it"). Moreover, Connecticut's limited liability company law specifically distinguishes LLCs from both partnerships and corporations. *See* Conn. Gen. Stat. § 34-101(18) ("'Other entity' means the any association or legal entity, other than a domestic or foreign limited liability company, organized to conduct business, including, but not limited to, a corporation, general partnership, limited liability partnership, limited partnership . . . .").

Based on their text alone, the only thing that is plain about §§ 52-59b(a) and 33-929(e)-(f) for present purposes is that *neither* explicitly applies to foreign LLCs. That said, the Court does not believe that the Supreme Court of Connecticut would conclude that neither long-arm provision applies to LLCs because such a result is so obviously contrary to Connecticut's longstanding public policy of submitting foreign individuals and businesses to suit in the State under some limited circumstances. *Cf. Rivers v. City of New Britain*, 288 Conn. 1, 17-18 (2008) (construing a statute with an otherwise plain meaning in order to avoid an "unworkable" result). The Court is not aware of any possible policy justification that might have motivated the legislature to completely exempt foreign LLCs from long-arm jurisdiction.[4] Because the Court finds that the plain meaning of the two

---

[4] The Court is also confident that the Connecticut Supreme would not hold that *both* long-arm statutes can be applied to foreign LLCs. Just as it would be unusual to construe legislature's omission as completely exempting LLCs from long-arm jurisdiction in Connecticut, it would be contrary to generally accepted statutory interpretation principles to construe the legislature's omission with specificity as permitting courts in Connecticut to exercise more sweeping personal jurisdiction over LLCs than they do over either partnerships or corporations.

13

statutes is ambiguous, the Court believes that the Connecticut Supreme Court would be willing to consider extratextual evidence of statutory meaning. *See Bell Atlantic Nynex Mobile*, 273 Conn. at 249-50.

Unfortunately, many of the usual tools of statutory construction are unhelpful in this case. The parties have not pointed the Court toward – and the Court has been unable to find on its own – any legislative history that assists in deciding this issue. The only inference the Court is willing to draw from the absence of any legislative history is that the legislature could not have radically shifted the policy of subjecting foreign business organizations to long-arm jurisdiction *sub silentio*. *Cf. Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 600-601 (1980) (Rehnquist, J., dissenting) (inferring from the absence of any legislative record that Congress did not intend a radical policy shift). Furthermore, the Court is also not aware of any canon of statutory construction that points in the direction of either § 52-59b(a) or of § 33-929(e)-(f) as the Connecticut long-arm provision applicable to foreign LLCs. Nevertheless, the Court is ultimately persuaded that § 52-59b(a) is the appropriate long-arm statute to applies to LLCs for three reasons.

*First*, the structure of the Connecticut General Statutes provides persuasive evidence that § 52-59b(a), and not § 33-929(e)-(f), is the long-arm jurisdiction statute applicable to foreign LLCs in Connecticut. Although § 52-59b(a) on its face is a statute with limited reach – to individuals, partnerships, and voluntary associations – it is codified in Title 52, which provides the general rules of civil procedure that apply in Connecticut courts. Section 33-929(e)-(f), on the other hand, is codified in Title 33, which contains Connecticut's corporation law. The placement of § 52-59b(a) and § 33-929(e)-(f) in the General Statutes suggests that §52-59b(a) is the generally applicable long-arm jurisdiction statute that applies to all business organizations other than corporations. Furthermore, although LLCs are neither corporations nor partnerships, Connecticut's Limited

14

Liability Company Act is codified at Title 34, which also includes Connecticut's partnership law, rather than at Title 33, which consists of the corporation law. While the placement of the limited liability company laws in the General Statutes does not necessarily support classifying LLCs as partnerships, it does counsel against applying to LLCs a long-arm provision specific to corporations.

*Second*, the Court also finds it persuasive that construing § 52-59b(a) to apply to LLCs requires less violence to the text of the statute than construing § 33-929(e)-(f) to apply to LLCs. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 529 (1989) (Scalia, J., concurring in judgment). If the Court reads the term "LLC" into the text of § 52-59b(a), all the other terms of the statute are equally applicable to individuals, partnerships, voluntary associations, and LLCs. The same is true of § 33-929(f), but it is not quite true of § 33-929(e). Under that subsection, a foreign corporation may be sued in Connecticut upon any cause of action arising from the corporation's transaction of business in Connecticut in violation of § 33-920. Section 33-920 is a provision that specifically requires foreign corporations to obtain a certificate of authority from the Secretary of the State before conducting business in Connecticut. Although there is an analogous provision requiring foreign LLCs to register with the Secretary of State, *see* Conn. Gen. Stat. § 34-223, § 33-920 does not apply to LLCs, and §§ 33-920 and § 34-223 do not appear to be precisely coextensive. Thus, interpreting § 33-929(e) to apply to foreign corporations and foreign LLCs to the same extent would require further significant textual alterations.

*Third*, the Court is confident that absent a clear and definitive textual answer, and absent any conclusive extra-textual evidence of statutory meaning, the Supreme Court of Connecticut would interpret § 52-59b(a) and § 33-929(e)-(f) in the manner most consistent with the ten years of lower Connecticut court decisions interpreting the two statutes. By this Court's count, the Superior Court has applied § 52-59b(a) to LLCs in five cases stretching over that ten year period. *See Technipower*,

15

2009 WL 3645708; *Pasquariello*, 2009 WL 3739445; *Horniatko*, 2005 WL 1671543; *Nadler*, 2003 WL 1963158; *New England Nat'l*, 2000 WL 254590.  The Court is aware of one Connecticut case in which a court applied § 33-929(e)-(f) rather than § 52-59b(a) to an LLC when neither party argued that § 52-59b(a) should apply, *see Swain*, 2004 WL 1966013; and one Connecticut court decision holding that both § 33-929(e)-(f) and § 52-59b(a) apply to LLCs.  *See Hartford Fire Ins.*, 2003 WL 1962864.  The Connecticut case law thus favors the application of § 52-59b(a), rather than § 33-929(e)-(f), to foreign LLCs.

Finally, the Court notes in conclusion that it has considered and rejected Insight's argument that foreign LLCs should be treated like foreign corporations rather than like partnerships for long-arm jurisdiction purposes because foreign LLCs and foreign corporations are both required to register with Connecticut in order to do business here.  Though clever, Insight's argument is not persuasive.  Partnerships are *also* required to register with the secretary of state in order to do business in Connecticut.  *See* Conn. Gen. Stat. §§ 34-38g; 34-429.  In sum, the Court concludes that the Connecticut's general long-arm jurisdiction provision, § 52-59b(a), applies to foreign LLCs, rather than Connecticut's corporation-specific long-arm provision, § 33-929(e)-(f).

### III.

The second legal question the Court must address is considerably easier for the Court to answer.  Insight suggests that even if § 52-59b(a) applies to foreign LLCs, the statute may not permit nonresident plaintiffs – such as the two Plaintiffs in this case – to sue foreign LLCs in Connecticut.  *See* Insight's Reply Memorandum of Law in Support of Motion to Dismiss [doc. # 134] at 3 n.2 ("[I]t is unclear whether Gen. Stat. § 52-59b(a) contains a comparable plaintiff residency restriction despite the absence of a reference to suits by 'any resident' . . . .").  Section § 52-59b(a) does not

16

contain a Connecticut residency requirement for plaintiffs who wish to sue foreign LLCs in Connecticut.

Neither the Supreme Court of Connecticut nor the Appellate Court has ever considered the argument that § 52-59b(a) contains a plaintiff residency requirement. However, as discussed above, the Connecticut Supreme Court would consider the text of the statute and its relationship to other statutes before turning to any extra-textual evidence of statutory meaning. *See* Conn. Gen. Stat. § 1-2z; *Picco v. Town of Voluntown*, 295 Conn. 141, 147 n.8 (2010).

Simply stated, the text of § 52-59b(a) does not include any residency requirement for plaintiffs. Section 52-59b(a) authorizes a court to exercise personal jurisdiction over a nonresident defendant based on the defendant's conduct in and affecting Connecticut, not on where the plaintiff resides. In this, § 52-59b(a) resembles § 33-929(e), which authorizes a court to exercise personal jurisdiction over any foreign corporation that transacts business in Connecticut without a certificate of authority and also contains no explicit plaintiff residency requirement. In contrast, § 33-929(f) authorizes courts to exercise personal jurisdiction over a nonresident corporate defendant only when the plaintiff is "a resident of this state or . . . a person having a usual place of business in this state." It would be particularly inappropriate for this Court to read an unwritten plaintiff residency requirement into § 52-59b(a) because the Connecticut legislature plainly knows how to include such a requirement in a long-arm jurisdiction statute when it so chooses. *Cf. Thomas v. Dep't of Dev. Servs.*, 297 Conn. 391, ---, 2010 WL 2705366, at *10 (July 13, 2010) ("In our view, the legislature's inclusion of the hearing requirement in § 52-225a(b) indicates that, when the legislature intends to create a hearing requirement, it will . . . includ[e] explicit language to that effect in the statute.").

Since the meaning of § 52-59b(a) is plain from its text and its relationship to other statutes,

17

including § 33-929(e)-(f), it is unnecessary for the Court to consider any other evidence of statute's meaning. However, the Court notes that it is aware of only one case in which a court held that § 52-59b(a) contains a plaintiff residency requirement. *See Pomazi v. Health Industries of America, Inc.*, 869 F. Supp. 102 (D. Conn. 1994). In *Pomazi*, the court dismissed claims filed by a New York resident plaintiff against California resident defendants, holding: "The Connecticut long-arm statutes do not confer jurisdiction over actions committed by a nonresident party against another nonresident." *Id.* at 104 (citing Conn. Gen. Stat. §§ 33-411(c) and 52-59b(a)). The court provided neither reasoning nor state court citations to support its holding, and its holding was inconsistent with a contemporary case from the Connecticut Superior Court upholding personal jurisdiction under § 52-59b(a) over a nonresident defendant sued by a nonresident plaintiff. *See Seatrade Compania v. Papdiolos*, No. CV92-0125736S, 1993 WL 7512 (Conn. Super. Ct. Jan. 11, 1993). Other courts have quoted *Pomazi*'s language, but only in cases involving the application of § 33-929(f), which contains an explicit plaintiff residency requirement. *See Estate of Nunez-Polanco v. Boch Toyota, Inc.*, 339 F. Supp. 2d 381 (D. Conn. 2004); *Fox Steel Co. v. Rohlf's Stained and Leaded Glass, Inc.*, No. CV-04-4000971S, 2005 WL 1433184) (Conn. Super. May 13, 2005). The Court declines to follow *Pomazi*.

## IV.

Under § 52-59b(a)(1), Insight is subject to personal jurisdiction in Connecticut as to any cause of action arising from Insight's business transactions in Connecticut. Despite Insight's representations to the contrary, *see* Memorandum of Law in Support of Defendant, Insight Holdings LLC's Motion to Dismiss [doc. # 39] at 8-9, the Supreme Court of Connecticut has interpreted the phrase "transacts any business within the state" in § 52-59b(a)(1) quite broadly. *See Zartoly v.*

*Nisenfeld*, 184 Conn. 471, 474 (1981). As used in that subsection, the phrase may embrace as little as "a single purposeful business transaction" that gives rise to a cause of action. *Id.* For example, in one recent case, the Superior Court of Connecticut exercised personal jurisdiction over a foreign LLC that never entered Connecticut, but instead merely ordered Connecticut-made goods from a Connecticut firm, and then stayed in touch with the firm thereafter through the mail and by telephone. *See Technipower*, 2009 WL 3645708, at *2.

Insight's reliance on *Rosenblit v. Danaher*, 206 Conn. 125 (1988), is misplaced. The *Rosenblit* court reaffirmed that the phrase "transacting business" as used in § 52-59b(a)(1) has a broad meaning that encompasses even a single purposive business transaction. *See id.* at 138. *Rosenblit* was a legal malpractice action; the Connecticut plaintiffs hired the Massachusetts defendant as their attorney, to represent them in their business dealings in Massachusetts, and to litigate a case from them in a federal court in Massachusetts. *See id.* at 127-28. The *Rosenblit* court merely held that the plaintiffs' showing that the defendant had held a single meeting in Connecticut did not show that their legal malpractice claim arose arise from the defendant's business transactions in Connecticut. *See id.* at 142.[5]

Thus, the relevant questions for purposes of this Court's § 52-59b(a)(1) inquiry are whether any of Insight's principals' conduct in Connecticut constituted "the transaction of any business" by

---

[5] The Court also cannot rely on the statement from *Vertrue v. Meshkin*, 429 F. Supp. 2d 479 (D. Conn. 2006), that "transacting business" as used in § 52-59b(a)(1) "is not broadly interpreted in Connecticut" to be reliable. *Id.* at 489-90. The *Vertrue* court relied on and quoted decisions regarding the interpretation of the phrase "transacting business" in Connecticut General Statutes § 33-411(b). *See Hagar v. Zaidman*, 797 F. Supp. 132, 135-36 (D. Conn. 1992). Indeed, the meaning of "transacting business" in that statute is narrow – but not because Connecticut courts have interpreted it narrowly. Rather, the phrase "transacting business" in § 33-411(b) is explicitly defined in the statute as transacting business without first obtaining the authorization of the Connecticut secretary of state. The term "transacting business" in § 52-59b(a)(1) is not so narrowly defined.

19

Insight, and whether Plaintiffs' causes of action under California and federal law arise from those business transactions. There is no dispute in this case that Insight's principals engaged in conduct in Connecticut related to the Archway Entities. *See* Reply Memorandum of Law of Defendant Insight Holdings, LLC in Further Support of its Motion to Dismiss at 5 n.4. The dispute is over whether Insight's principals attended meetings in Connecticut regarding the Archway Entities in their capacities as representatives of Insight, or in their individual capacities as directors and officers of the Archway entities – or, perhaps, both. The Court does not believes the parties' briefing provides the Court with a sufficient basis to make that determination, which may turn, at least in part, on the credibility of the Insight principals. The Court requires an evidentiary hearing to determine whether it may exercise jurisdiction over Insight consistent with Connecticut law and with due process.

## V.

Having considered and resolved only the two pure questions of law raised by Insight's [doc. # 95] Renewed Motion to Dismiss for lack of personal jurisdiction, the Court DENIES the motion without prejudice to renewal following the evidentiary hearing.

IT IS SO ORDERED.

/s/ Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **August 2, 2010.**